for argument is 21-1624, Bailey versus United States. No, don't sit down, Mr. Johns, come on. Good morning, and may it please the court, I'm Milton Johns, here on behalf of retired Lieutenant Colonel Tom Bailey. I may refer to him as Mr. Bailey sometimes, but he is retired Lieutenant Colonel. This matter has been briefed and submitted to the court, and on behalf of Mr. Bailey today, I wanted to focus on two key areas for your consideration as you review the matter and consider our oral arguments today. First, we agree with the Department of Justice, with the government, that the matter before the court is reviewed de novo, and so we can depart, I think, from that standpoint. And so, I think what the court is charged with and what we are charged with proving is that the Air Force Board of Corrections for Military Records, the AFB-CMR, made its decision ruling against Mr. Bailey in an arbitrary and capricious manner, or without . . . When you say de novo, you're not suggesting that this is for us to decide the facts, everything about this case, as if nothing had gone on before? No, Your Honor, it's simply to review whether their determination was arbitrary and capricious. Okay. The issue that was before the Court of Federal Claims, and now before this Court, goes to whether the AFB-CMR properly considered its own medical experts. It was remanded from the Court of Federal Claims back to the AFB-CMR one time previously, and the AFB-CMR was directed to use a preponderance of the evidence standard. Once again, the . . . So, what is it you think was compelling or misunderstood or not treated appropriately in terms of that testimony? So, Your Honor, the first complicating factor we put before the Court is that the experts were the Board's own experts that provided the compelling testimony that, in fact, Mr. Bailey's actions were not . . . Mr. Bailey's actions at the time in question were the result of a medical condition. And so, the departure point that the Board solicits these experts, and I think both sides admit that that was discretionary to the Board, but once engaged, it would be arbitrary and capricious to simply discount them. Now, on reconsideration after the remand from the Court of Federal Claims, the Board did produce language that said that they thought that the opinions were half-hearted and uncertain and unconvincing. But, even without re-weighing that evidence, I think just a plain reading of the conclusions of those experts belies the Board's determination that they were half-hearted and unconvinced and uncertain. Well, half-hearted maybe a little bit is an unfortunate terminology that suggests that it was dashed off, which I'm sure was not the case. But, uncertain seems to me not an entirely inaccurate description of both experts, one of whom said, if I recall, that this medical condition could have been a precipitating factor, and the other, the psychiatrist, I think it was, said that she viewed it as sufficiently likely that she thinks that the Board should consider granting relief. But, both of them are in the area of possible slash likely, it seems to me, and I'm not sure how inaccurate the AFLS Board of Correctional Military Records is in its characterization. Well, Your Honor, I think in response what I would say is that it is all still under, it has to be looked at through the lens of the standard, or the burden of proof, which is preponderance of the evidence. And these opinions are, in addition to Mr. Bailey's own evidence presented, reasonable circumstantial evidence can produce reasonable inferences. And I think that the, certainly Dr. Cherniak's conclusion, both medical experts recommended providing relief to Mr. Bailey. And so, while some of their language related to the diagnoses may be, may be somewhat reserved, their recommendations are both that Mr. Bailey be granted relief. And so, to the extent that there's a question of them being half-hearted or uncertain, I don't see their recommendation to the panel that Mr. Bailey be granted that relief. Well, I mean, Dr. Carson recommends Mr. Bailey be granted the relief, but Dr. Carson's opinion at page 182 and 183 really just goes back and forth, back and forth, over whether the And one of the things that Dr. Carson laments is the fact that there was no blood alcohol level or drug screening or breathalyzer at the time. The guy, by his own admission, drank five 80-proof beverages that day. I don't know. I don't think I need a breathalyzer to know that alcohol wasn't obviously a factor. And that seems to be what Dr. Carson is saying. So, while Dr. Carson erred on the side of saying that, it really, I really read this opinion, and I've read each of the doctor's opinions entirely. It, he recommends granting the relief, but at the same time, cannot rule out that this is an alcohol-related problem. Well, Your Honor, in response, the record, I believe, indicates that the 80-proof drink was Mr. Bailey's last drink, the Aquavit. What were the first four? That they were beers and a sangria. I think this is... Where is that in there? And this, I'm looking at... Well, I have the impression that they, at least at some point in the record, they referred to five Aquavits. Aquavit is a pretty strong drink. I think it's equivalent to vodka. I would agree, Your Honor. I'm looking at the Appendix 180, and this is the report from Dr. Mendenhall, who was Mr. Bailey's physician at the time. It says three beers, one sangria, then the Danish tint, which is the national beverage, one drink of Aquavit. And the testimony is that these occurred over six hours. And I think, Your Honor, to go just a little bit further, the medical determination... He had these five alcoholic beverages while knowing he was taking any histamines. Well, interestingly enough, Your Honor, Brigadier General Hyde ruled out the suggestions from Dr. Mendenhall, which was the 2011 analysis, where Dr. Mendenhall said, you know, it was alcohol, but there was also heat exhaustion, there was insomnia, there was antihistamines, there was a wide combination of issues. Can I just interrupt you, because I'd like to think about the context in which we're having this discussion about all these factual findings, and in several places. But the Court of Federal Claims, I guess in the reconsideration decision, says this Court has already concluded there is justification in the record for the AFB-CMR's conclusion that Mr. Bailey's consumption of alcohol, not his recently diagnosed seizure condition, was more likely than not the cause of his conduct. For this reason, we affirm. And the government... Maybe I misheard. I thought you started off by saying we're all in agreement this is de novo review. On what basis do we review those conclusions? The government, in its brief, says the government will not disturb the decision of the AFB-CMR unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence. So did I misunderstand, or am I misunderstanding what the argument is here? Your Honor, our argument is that the central argument is that the AFB-CMR, by disregarding the medical testimony of its own experts, made an arbitrary and capricious decision. And we believe that that is reversible. And so I think that that's the departure point. Are you arguing for an across-the-board per se rule that if the AFB-CMR seeks advice as to a question, a medical-type question from experts, that it may not depart from the conclusion that those medical experts reach as to the recommended action to be taken? No, I don't think that's the proposition, Your Honor. But I think that the proposition is that they can't be disregarded. And we believe that... I don't know that it's fair to say they were disregarded in this case because they were addressed. And the board found that it was not persuaded to take the same view that the medical experts did as to the propriety of, in fact, cutting him some slack. Well, the board's decision... Those reports were disregarded because the board disagreed with the recommendations. Is that enough to constitute disregarding them even if they discussed them? Yes, Your Honor. I think that the case law would suggest that you have to consider all the evidence, including the evidence that's against the board's own decision. And I think that to say we considered it, the board could simply say, we considered the evidence. Anytime there's evidence that conflicts with the board decision, if they simply say, well, we considered it and find it unconvincing, then every case... You're not suggesting that they absolutely have to adopt it. Then it wouldn't be a recommendation. It would be deferring decision-making to these experts, right? So that's not the position they're taking, right? No, clearly that's not the position. But, again, there's the notion of the weighing of the evidence. And I think that disregarding it doesn't give it proper weight of evidence. It's also, I think, important to note that Brigadier General Hyde, his decision was that it was the original one, which sets us off on this case, was that it was solely consumption of alcohol. In fact, he disregarded Dr. Mendenhall's diagnosis and analysis. So, really, all of these proceedings go back to a medical decision made by the commanding officer who was not a physician himself. The totality of the evidence shows that there's no physician that says conclusively that it was alcohol or alcohol intoxication. There is, because of the matter that Chief Judge Moore addressed, there was no BAC. There was no breathalyzer test. What is it that you allege we should conclude was the basis for the action he undertook that day? You're asking us to, what, overturn the fact-finding that alcohol was the factor? What precisely are you asking us to do? Well, we're asking to reverse and remand for the Board to provide proper— But precisely to do what? Like overturn which particular fact-finding, which conclusion of law, which thing is arbitrary and capricious, which particular thing? That the Board's conclusions based on its own expert reports were not considered in a reasonable manner. That they must reconsider those experts. Well, they considered them and talked about them. You just don't like the result they reached with regard to them. So I don't understand what us sending them back and telling them to, air quotes, consider them would get you because they did consider them. Well, we believe, Your Honor, that with the reconsideration and the direction that they provide, the proper weight, the proper analysis, that it would result in a different— See, I'm still not following you in terms of the relief you want. There's two things that we could do. We could say the Board didn't consider something, send it back and make them reevaluate everything, taking that into consideration. And we often do that if a Board completely fails to address something that seems very important. But that's a matter of they didn't consider it. Here it's clear they did, right? There's no evidence they were oblivious to this. They did consider it, right? You just don't like the outcome they reached. Well, I think that the determination that they made and the outcome that they reached is unreasonable given what was before them. So then you want us to flat out reverse and say that no reasonable Board could have concluded on this record as they did. That's what we believe in. All right. Let's hear from opposing counsel. Thank you, Honor. Mr. Warfield. May it please the Court. Mr. Bailey's appeal has raised three key issues as set forth in the government's papers. And as I will explain further, all of these arguments lack merit. First, the Court should reject Mr. Bailey's argument that repeated reconsideration by the Board ofó He didn't raise that today in oral argument. He didn't really want to start with that. Certainly I'm happy to get into the issue of the decisions, Your Honor. That's what Mr. Bailey's argument has focused on today. The trial court's initial decision had concluded that the Board had erroneously applied a higher standard than was required and asked Mr. Bailey to prove by more than a preponderance of the evidence that there was an error. Let me just cut to the chase. Mr. Bailey's argument, as I understand it, and I have some sympathy to this, is the Board decided not to just look at this based on all the evidence of record but rather to obtain its own independent medical examinationsó or medical opinions, not necessarily exams, but opinions. Is that accurate? That's accurate. And the Board got twoóam I right about this? Twoóis it Carson and Chernyak? Yes, Your Honor. And both of them concluded in favor of Mr. Bailey's seizure disorder and said they couldn't agree this was entirely attributed to any intoxication. Is that fair? Well, they essentially say they can't tell, they can't be certain about it, and both opinions indicate that there's no certainty. They do, to different degrees, seem to recommend something. What the initial opinion from Dr. Carson recommends is simply that consideration be given to giving Mr. Bailey some relief. Dr. Chernyak, at the end of her opinion, decides to defer to the neurologist and recommend relief, but thisóI'm reading Chernyakó this psychiatric consultant is in agreement with the opinion of the BCMR medical advisor and finds no indication to disagree with the diagnosis of a seizure disorder provided by a military neurologist and recommends granting the applicants relief. It doesn't seem quite as equivocal as you're suggesting. Well, she agrees with the diagnosis of the seizure disorder by the neurologist. And recommends granting the applicant the relief they seek. But agreeing with the diagnosis of the seizure disorder is not saying that she's deciding that what happened that day caused this seizure. She finds the decisions of the military department did represent an error. That's not equivocal. Well, I mean, what the neurologist says is that it's possible that this incident was caused by a seizure. She does recommend approval after talking about her appreciation of Mr. Bailey's service, but I think saying that she agrees with the diagnosis of a seizure disorder is not saying that she's concludedó She's concluded that because she agrees with the seizure disorder, she should grant the applicant relief. If she really thought his behavior that day was a direct result of intoxication and not likely attributed to the seizure disorder, she wouldn't say grant him the relief. She didn't say, oh yeah, it turns out he has a seizure disorder in a vacuum. She said he has a seizure disorder, and I think he should get the relief in this case where the argument was did the behavior result from the seizure disorder or from the alcohol or potential intoxication, the drug or alcohol issues. She says grant him the relief he seeks. That's not equivocal. And the other opinion is equally clear. So you haveóI think Mr. Bailey's concern, which is legitimate, is the board decided to get its own two opinions, and both of them came back in his favor. And then the board is like, yeah, it turns out we didn't want those opinions after all and just goes ahead and decides to the contrary. I don't know. Maybe their decision is still not arbitrary and capricious, but I certainly understand why he's here on appeal. Well, Your Honor, there's a lot of other language in those two opinions as well as the final conclusion that shows that the medical person, the psychiatrist in the case of Dr. Chernak or Dr. Carson, are having a lot of questions about whether a medical issue could explain the event of that day and never come to a conclusion. There's very tentative language. That's what the board talks about in its decision. And although someone reweighing that evidence might come down with a different decision, that's not what the court's role here is. I mean the court's role is to look at whether a reasonable person applying the correct standard could come to this conclusion, and there's certainly plenty of tentative language in these decisions identified by the board that indicate that these two medical advisors were not able to conclude affirmatively that the reason for Mr. Bailey's violent activities on the day in question was a seizure rather than other factors. I suppose this isn't really a binary choice. It may be, and this is suggested in the opinions of the experts, that this was an underlying condition which was exacerbated by the alcohol, the antihistamines, and the heat. That is a possibility that they indicate that it could be. I mean in general, the decisions are pretty clear that they're unable to state for certain what happened on that day. There's not any medical evidence that could make it absolutely clear it could be one factor, it could be another, it could be a combination as the court indicated. Turning back to an issue that's come up in Mr. Bailey's papers, one of his main arguments is that the consideration of the decision over and over again reflects some sort of bad faith and is itself arbitrary and capricious. And as we discussed in our papers, the statute and regulations provide an opportunity to provide for reconsideration. They don't put limits on that. But Mr. Bailey has suggested that there's bad faith here in some way. Now there's no evidence of bad faith in the record. The record shows that the board was acting in very good faith. I tried to lead you away from this. I'm sorry. I tried to open with it and I sort of failed to understand your lack of appreciation. I hope you realize, as a government attorney, when you discuss something that they didn't, you now open the door to him doing whatever he wants on rebuttal because he didn't discuss it in his opening, so I wouldn't have let him discuss it in rebuttal. But now because you have, he can say whatever he wants on it. If you hadn't spoken to it, the whole thing would have gone on the way of the papers. Maybe you think your papers are weak. That's the only conclusion I reach when the government attorney stands up and tries to discuss something that was never mentioned at oral argument. So now you probably ought to address it. I'm sorry, Your Honor. In any event, I just wanted to note with respect to bad faith that there is significant evidence that the board was acting in good faith with a lot of concern for providing Mr. Bailey the proper process here. But, I mean, honestly, the back and forth of the board, I mean, well, look, I'm a big fan of sometimes you can make a mistake and you get bonus points for correcting it because that means you're not sort of dug in that I was right the first time and I'm never going to admit error. But, I mean, didn't the board have to go back and forth on this one like five different times all because of board mistakes? I mean, that's a lot of mistakes. One, shame on me. Five, what the heck. Again, it kind of explains to me why Mr. Bailey is here. It seems like he's got a tough deal. Well, Your Honor, it seems that these weren't so much board mistakes as perhaps internal mail issues. These were situations where the board didn't get a document before it completed its consideration. So there may have been some sort of administrative issue. But the board was very concerned with this and at every opportunity used its discretion to provide Mr. Bailey with reconsideration. It reconsidered his case on its own motion at one point. And that therefore dragged it on for six years and five decisions because they repeatedly violated their own rules or messed up. It offered him a new panel. And in that letter where it wrote to him offering him a new panel, the second page of that letter provides a very heartfelt expression of him having appropriate due process and their commitment to providing him that. Kind of a model of what you would want for a tribunal that's made an error. Mr. Bailey's also taken issue with this concern about not getting a new panel on the final review when the case was remanded back from the trial court. All the previous reviews, Mr. Bailey received a new panel. On the final review back from the trial court, I'd just like to note that because we didn't understand that he was arguing about that one, that one was raised in his reply brief, that in the initial letter that promised the new panel, there's an explanation for why a new panel would not have been possible at that point or to achieve the goals that the board was concerned about when it offered a new panel in the first place. The letter talks about wanting Mr. Bailey not to submit anything about the prior reviews to the new board so that the new panel was completely unaware of the prior reviews. And with a panel that was dealing with implementing or responding to a court order that described all the prior reviews, that was no longer something that would be possible, even if the board had needed to do it. But there's certainly no regulation, and its commitment was a promise at that time, not necessarily a promise for all time. So I don't think there's any indication that there was bad faith or that it was improper in any way for the board to not assign a new panel when the case was reconsidered after a month. If the court has no further questions, nothing further. Thank you. Thank you, Ms. Norfield. Mr. Johns, you have some of the letter for him? Very briefly, Your Honor. I think that two points that are appropriate to bear out. The standard isn't certainty of opinion. If the standard was certainty, that is well beyond the preponderance of the evidence. And so I think to say that the medical experts were not conclusively certain takes the consideration beyond a preponderance of the evidence. Again, knowing that circumstantial evidence can lead to reasonable inferences. So, Mr. Johns, here's your problem. I mean, as you could tell from my questioning of the government, I'm certainly sympathetic to the way in which this case, from a procedural standpoint, was bobbled. And as far as the government's claim of the heartfelt opinion that is exactly what you want an agency to do when they've made a mistake, yeah, but I want them to do that after the first mistake, not after the fifth mistake. You know, our military people deserve better. If Mr. Bailey was as bad in combat as the board was in deciding his case, God help our country. And I'm sure that's not the case. So in any event, having gotten off my pulpit now, I'm sympathetic to what Mr. Bailey went through, and I'm sort of a little bit ashamed at the process failures inherent in his case. But the bottom line is he had five drinks after taking drugs out on a hot day, bit somebody, grabbed somebody by the throat, threatened somebody, and the only consequence he suffered was, we're not going to promote you. At the end of the day, I got to be honest, forget about all law and everything else. Sounds kind of like it turned out fairly. I'm sorry because the man had an exemplary service record, but his behavior was not exemplary on that day. And the medical opinions are equivocal about what caused it. None of them discount the fact that he had five drinks and had taken two pills and that that could have, yes, an underlying seizure disorder could have contributed to his bad behavior, but so probably did all of these things. They probably exacerbated whatever underlying seizure disorder he had. And at the end of the day, the consequence he reached, that was reached, the consequences for his actions, it's hard for me to conclude that there was anything arbitrary and capricious about it. I'm sympathetic. I appreciate his service. I think he was badly treated in the process portion of all this. But at the end of the day, is it really arbitrary and capricious for them to have concluded he shouldn't be promoted and that all of his personal voluntary acts contributed to what caused him to behave the way he did? I'm having trouble concluding that was arbitrary and capricious. I just want to tell you exactly where I am. I'm putting it all out there for you. I appreciate that, Your Honor. And if I might just very briefly respond, the central nature of Mr. Bailey's argument was that the behavior certainly is not condonable and is egregious was not his voluntary action and that it was not something that he was controlling. But the drinking was. Alcoholics say they're not responsible for the actions that occur afterwards because it's a sickness, right? So the drinking wasn't voluntary. I'm an alcoholic. I'm not saying he's an alcoholic. Let me be clear. He did have a condition and then chose to consume alcohol, chose to take antihistamines, and those things undoubtedly exacerbated whatever he experienced. Nothing further, Your Honor. Thank you. I thank both counsel in case it's taken under submission.